FILED
CLERK, U.S. DISTRICT COURT
MAR - 2 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: RS DEPUTY

LESLIE J. HUGHES
(*pro hac vice application pending*)
HughesLJ@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, Suite 1700
Denver, Colorado 80294-1961
Telephone: (303) 844-1086
Facsimile: (303) 297-3529

Local Counsel:
AMY JANE LONGO (Cal. Bar No. 198304)
longoa@sec.gov
SECURITIES AND EXCHANGE COMMISSION
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW L. FASSARI,<br><br>Defendant. | Case No. 8:21-CV-00403-JVS-ADSx<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER (1) FREEZING ASSETS; (2) PERMITTING ALTERNATIVE MEANS OF SERVICE; (3) REQUIRING AN ACCOUNTING; (4) PERMITTING EXPEDITED DISCOVERY; (5) PROHIBITING DESTRUCTION OF DOCUMENT; AND (6) TO SET HEARING ON ORDER TO SHOW CAUSE**<br><br>**(FILED UNDER SEAL)** |

1

TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................... 4
II. STATEMENT OF FACTS .......................................................................... 5
III. ARGUMENT ............................................................................................... 8
  A. The SEC Has Made a *Prima Facie* Showing That Defendant Violated The Federal Securities Laws ............................................... 8
    1. Defendant violated the antifraud provisions of Section 17(a), Section 10(b) and Rule 10b-5 ............................................... 8
      a. Fassari engaged in fraud in connection with purchase and sale and in the offer and sale of securities ................. 8
      b. Fassari made material misstatements ........................... 10
      c. Fassari acted with scienter ............................................ 11
      d. Fassari was negligent ................................................... 12
      e. In Interstate commerce ................................................. 13
    2. Fassari's Violations are Likely to be Repeated ............................. 13
  B. An Emergency Asset Freeze is Appropriate ............................. 14
  C. The Other Relief Sought by the SEC is Necessary .................. 15
IV. CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. SEC*,
   446 U.S. 680 (1980) .................................................................................. 10, 13

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ........................................................................................ 12

*FTC v. Affordable Media, LLC*,
   179 F.3d 1228 (9th Cir. 1999) ........................................................................ 15

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .......................................................................... 12

*Herman & MacLean v. Huddleston*,
   459 U.S. 375, n.30 (1983) .............................................................................. 13

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990) ........................................................................ 13

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ........................................................................ 15

*Reebok Int'l, Ltd v. Marnatech Enterprises, Inc.*,
   970 F.2d 552 (9th Cir. 1992) .......................................................................... 16

*Robare Group, Ltd. v. SEC*,
   922 F. 3d 468 (D.C. Cir. 2019) ....................................................................... 13

*SEC v. Ahmed*,
   123 F. Supp. 3d 301 (D. Conn. 2015) ............................................................ 16

*SEC v. Burns*,
   816 F.2d 471 (9th Cir. 1987) .......................................................................... 13

*SEC v. Dain Rauscher, Inc.*,
   254 F.3d 852 (9th Cir. 2001) ............................................................. 10, 12, 13-14

*SEC v. Fehn*,
   97 F.3d 1276 (9th Cir. 1996) .................................................................... 12, 14

1  *SEC v. Haligiannis*,
2       470 F. Supp. 2d 373 (S.D.N.Y. 2007) ................................................................. 10
3  *SEC v. Hickey*,
4       322 F.3d 1123 (9th Cir. 2003) ............................................................................ 15
5  *SEC v. Hughes Capital Corp.*,
6       124 F.3d 449–54 (3d Cir.1997) .......................................................................... 14
7  *SEC v. International Swiss Invs. Corp.*,
8       895 F.2d 1272 (9th Cir. 1990) ............................................................................ 17
9  *SEC v. Maillard*,
10      2014 U.S. Dist. LEXIS 56456 (S.D.N.Y. 2014) ................................................. 16
11 *SEC v. Materia*,
12      745 F.2d 197 (2d Cir. 1984) ............................................................................... 16
13 *SEC v. McDiarmind, No. 2:17-cv-07201*,
14      2018 WL 5263067 (C.D. Cal. Jan. 13, 2018) .................................................... 17
15 *SEC v. Sripetch*,
16      2020 U.S. Dist. LEXIS 204293 (S. D. Calif. Nov. 2, 2020) ..................... 12, 15, 16
17 *SEC v. Unifund SAL*,
18      910 F.2d 1028 (2d Cir. 1990) ............................................................................. 15
19 *SEC v. Wencke*,
20      622 F.2d 1363 (9th Cir. 1980) ................................................................ 15, 16, 17
21 *TSC Indus., Inc. v. Northway, Inc.*,
22      426 U.S. 438 (1976) ........................................................................................... 12
23 *Vernazza v. SEC*,
24      327 F.3d 851 (9th Cir. 2003) .............................................................................. 13
25 **Statutes and Rules**
26 15 U.S.C. § 77q .......................................................................................... 6, 10, 11
27 15 U.S.C. § 78j ........................................................................................... 6, 10, 11
28 15 U.S.C. §§ 77q ........................................................................................... 10

17 C.F.R. § 240.10b-5 ........................................ 6, 10
17 C.F.R. §§ 240.10b–5 ........................................ 7, 11
Fed. R. Civ. P. 65 ........................................ 16
Fed. R. Civ. P. 10 ........................................ 2, 6, 10
Fed. R. Civ. P. 10 ........................................ 11
Fed. R. Civ. P. 30 ........................................ 17

**Other**

*Restatement (Third) of Torts: Liability for Physical & Emotional Harm* § 3 (2010) ........................................ 13

## I. INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") brings this emergency action against Defendant Andrew L. Fassari ("Fassari" or "Defendant") for violations of the anti-fraud provisions of the federal securities laws, and, by this Application, the SEC seeks an order freezing Fassari's assets and other immediate relief.

Fassari, using the Twitter handle @OCMillionaire, posted statements on Twitter recommending investing in the shares of Arcis Resources Corporation ("ARCS"). Fassari disseminated false and misleading statements that ARCS, a company that has been defunct for almost four years, had significant operations and was expanding; Fassari claimed that he learned this information in communications with the chief executive officer of ARCS, when in fact he had no such communications. Fassari purchased over 41 million ARCS shares on December 9, 2020. Over the next week, following his publication of false and misleading statements on Twitter promoting ARCS stock, the price rose substantially. Fassari continued to recommend and tout ARCS on Twitter and claimed that he was holding his shares. But contrary to his representations, Fassari sold his entire holding of over 41 million shares from December 10 through December 16, 2020. He made a profit of approximately $929,693.88.

Fassari's false and misleading statements about ARCS and his trading activities violated the anti-fraud provisions of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.

The SEC seeks an emergency order to freeze Fassari's assets up to the amount of $1,859,387.76, which is equal to his ill-gotten gains of $929,693.88, plus civil penalties equal to this disgorgement amount. An *ex parte* asset freeze is necessary to prevent Fassari from dissipating his assets so funds will be available to be paid as disgorgement for the benefit of victims of the fraud and a civil penalty equal to his ill-gotten gains.

## II. STATEMENT OF FACTS

<u>In December 2020, ARCS Was a Defunct Entity.</u>

6

Arcis Resources Corporation ("ARCS" or the "Company") is a Nevada company whose last known place of business was in Denver, Colorado. *See* Declaration of John Dwyer ("Dwyer Decl.") at ¶ 12. ARCS is a public company and its common stock is quoted under the trading symbol "ARCS" on OTC Link, whose parent company is OTC Markets Group Inc. ("OTC Markets"). *Id.* On January 13, 2015, ARCS filed a Form 15 with the Commission, terminating the registration of its securities pursuant to Section 12(g) of the Exchange Act, and suspending its obligation to file Exchange Act periodic reports. *Id.* In 2016, OTC Markets posted on its website a June 30, 2016 Quarterly Disclosure Statement of Arcis Resources Corporation, which identifies Raul Santos as the chief executive officer ("CEO") of ARCS and lists the company website as www.arcisresourcescorp.com. This is the last disclosure statement for ARCS posted on OTC Markets' website. *Id.* at ¶ 13.

In late 2016, ARCS ceased doing business and became a dormant shell company. Declaration of Raul Santos[1] ("Santos Decl.") at ¶ 3. The Company stopped paying for or maintaining its website, and the website became available to the general public to purchase. *Id.* at ¶ 3. No one replaced Mr. Santos as the CEO of ARCS. *Id.* at ¶ 1.

<u>Fassari Used the Twitter Handle @OCMillionaire.</u>

Since July 2013, Fassari has used the Twitter handle @OCMillionaire to promote the stock of various companies on Twitter. Dwyer Decl. at ¶ 16. On December 18, 2020, @OCMillionaire posted a tweet describing some of his specific trading in ARCS. *Id.* at ¶ 30, Exh. 11. To support his trading claims, he posted a screenshot of an E*Trade account showing a sale of 35,311,809. The blotter for Fassari's E*Trade account confirms that he sold—exactly—35,311,809 shares of ARCS on December 18, 2020. *Id.*, Exh. 11. On May 31, 2013, a user named OCMillionaire posted information on message boards for InvestorsHub. OCMillionaire wrote "FOR THOSE OF YOU WHO CANT VIEW MY FB LINK, THIS IS THE EMAIL I GOT" and quoted an email

---

[1] Mr. Santos currently resides in Macau, China and is not currently available to appear in person for any hearing that may be set in this matter.

7

sent to "Andrew Fassari" at email address andrewfassari@ymail.com. Dwyer Decl. at ¶ 31, Exh. 12. As of February 28, 2021, he had approximately 13,100 followers on Twitter. Dwyer Decl. at ¶ 16.

<u>Fassari Made Numerous False and Misleading Statements on Twitter Regarding ARCS and His Trading.</u>

Between December 9 and 21, 2020, Fassari published 120 tweets about ARCS recommending investors purchase shares in the Company. Dwyer Decl. at ¶ 27, Exh. 10, Summary of OCMillionaire Tweets regarding ARCS; Exh. 11, Copies of Certain Tweets. On December 9, at 10:46 a.m. ET, Fassari started recommending ARCS shares with the tweet "15 Min[utes] till my new alert that I am expecting 3000% minimum" and then at 10:57 a.m. ET tweeted "OK GUYS! THE NEW ALERT IS $ARCS!! … Lets buy!" Dwyer Decl. at ¶ 27, Exh. 10, lines 1, 2.

In his tweets published between December 9 and 20, 2020, Fassari falsely claimed that ARCS an operating cannabis business and possessed over 1.4 million square feet of space for cultivation and processing, was expanding its business out of state, projected revenue of $450 million, and was involved in merger negotiations. Dwyer Decl. at ¶ 27, Exh. 10, lines 6, 23, 40, 41, 55, 66, 67, 89,  Fassari also falsely claimed that ARCS was backed by huge investors and a hedge fund was investing in ARCS. Dwyer Dec. at ¶ 27, Exh. 10, lines 8, 41. Fassari also falsely represented that he was communicating with ARCS's CEO, Raul Santos, about business developments in the Company and included fabricated emails allegedly from ARCS's CEO that described the Company's recent business prospects. Dwyer Dec. at ¶ 28. Contrary to his representations in the various tweets, the Company was not an operating business in the cannabis industry, did not possess 1.4 million square feet of space for operations, and was not involved in merger negotiations. Rather it was a dormant shell company. Santos Decl. ¶ 3, 8-12. In addition, Fassari was not communicating with Raul Santos, ARCS's CEO. Santos Decl. ¶ 6, 7, 13-16.

Fassari also made false statements about his trading activities in ARCS securities.

8

On December 10 and 14, 2020, Fassari claimed on Twitter to his thousands of followers that he was holding onto his ARCS shares when in fact he was selling shares on both of those days. Dwyer Dec. at ¶ 27, Exh. 10, lines 64, 79, 81.

### After Touting ARCS With False and Misleading Statements, Fassari Sold ARCS For a Large Profit.

On December 9 starting at about 9:31 a.m. ET (over an hour before his first tweet), Fassari began purchasing ARCS stock and accumulated over 41 million shares on that day. Dwyer Decl. at ¶ 18. Fassari made his first purchase of ARCS shares at $.0012 per share, and he continued to make incremental purchases through mid-day at increasingly higher prices until he had purchased approximately 41,071,413 shares in 107 transactions, which cost approximately $90,095.03. *Id.* Fassari's final two purchases of shares on December 9, 2020 occurred at around 12:49 p.m. ET and were executed at prices of $.007 and $.0069, *id,* an over five-fold increase from his first purchase price. Following Fassari's numerous false and misleading statements promoting ARCS, the price stock rose to an intraday high of $0790 by December 14. Dwyer Decl. at ¶ 40. Contrary to his statements that he was holding all his shares, Fassari sold his entire position of 41,071,413 shares of ARCS over three days: December 10 (selling 25,000 shares), 14 (selling 4,045,939 shares), and 16 (selling 37,000,474). Fassari realized gross proceeds of $1,019,788.91, and a resulting profit of approximately $929,693.88. Dwyer Decl. at ¶ 19. Fassari has used a portion of the trading profits from his ARCS share sales to purchase the securities of other companies. *Id.* at ¶¶ 21, 25.

There is a substantial risk that Fassari will dissipate the trading profits from his ARCS share sales. Fassari's brokerage account shows that he used the proceeds from his trading in ARCS stock to purchase other securities, and he continues to trade in that account. His brokerage account also shows that he is trading in the securities of companies that he recommends on his Twitter account. His brokerage account was valued at $370,461.92 as of January 31, 2021, substantially less than his illegal profits

from trading ARCS stock. Dwyer Decl. at ¶ 25.

## III. ARGUMENT

### A. The SEC Has Made a *Prima Facie* Showing That Defendant Violated the Federal Securities Laws

#### 1. Defendant violated the antifraud provisions of Section 17(a), Section 10(b) and Rule 10b-5

Section 17(a) of the Securities Act, prohibits fraud in the offer or sale of securities, using the mails or instruments of interstate commerce. 15 U.S.C. § 77q(a). Section 10(b) of the Exchange Act and Rule 10b-5 prohibit fraud in connection with the purchase or sale of any security. 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; *see SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855 (9th Cir. 2001). Courts essentially apply the same elements for determining liability under these provisions. *See, e.g. SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381 (S.D.N.Y. 2007).

To establish a violation under these anti-fraud provisions, the SEC must prove that a defendant: (1) made a material false statement or material omission or engaged in deceptive conduct, (2) in connection with the offer, sale, or purchase of a security, (3) by means of interstate commerce. *See* 15 U.S.C. §§ 77q(a), 15 U.S.C. § 78j(b)10(b), 17 C.F.R. §§ 240.10b–5(a), (b) & (c). Further, scienter is required to prove a violation of Section 17(a)(1), Section 10(b), and Rule 10b–5, while Section 17(a)(2) and (3) can also be proven by showing a defendant acted negligently. *Aaron v. SEC*, 446 U.S. 680, 695 (1980).

##### a. Fassari engaged in fraud in connection with purchase and sale and in the offer and sale of securities

Fassari purchased millions of shares of ARCS and made false and misleading statements via Twitter about ARCS to encourage investors to buy the stock. Then, after the price of ARCS stock rose in response to the false and misleading statements, and, at the same time that Fassari was encouraging others to purchase and representing that he was holding his shares, he liquidated his ARCS shares for over $1 million. Sections

17(a)(1) and 17(a)(3) of the Securities Act prohibit any person, "in the offer or sale of any securities," from employing "any device, scheme, or artifice to defraud," 15 U.S.C. § 77q(a)(1), or from engaging in "any transaction, practice, or course of business which operates, or would operate, as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a)(3). Likewise, Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder make it unlawful for any person, "in connection with the purchase or sale of any security," "[t]o employ any device, scheme or artifice to defraud," or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 15 U.S.C. § 78j(b); 17 C.F.R. §§ 240.10b-5(a), (c).

   Fassari engaged in a course of business designed to create the false impression that ARCS was an active company that was expanding its business, with a stock price was expected to increase a minimum of 3000%. Fassari falsely claimed, among other things, that ARCS was expanding its business including acquiring of 1.4 million square feet of space for its cannabis operations, expanding its business into multiple states and considering a merger. Dwyer Decl. at ¶¶ 27, 28. These statements were false because ARCS was defunct, did not have 1.4 million square feet of operating space, was not expanding its business or involved in a merger. Santos Decl. at ¶ 3, 10. Fassari also falsely claimed ARCS shares were being purchased by large investors and a hedge fund. Dwyer Decl. at ¶ 27. In addition, Fassari also falsely claimed he was in direct communications with the CEO of ARCS. Dwyer Decl. at ¶ 28. In fact, Fassari was not communicating with the CEO. Santos Decl. ¶ 14, 15. When the CEO became aware that someone was spreading lies about ARCS on Twitter, he contacted OTC Markets about how to stop investors from any further harm. Santos Decl. ¶ 4.

   Fassari also misrepresented his trading activities in ARCS securities to his thousands of followers on Twitter. Dwyer Decl. ¶ 27. He repeatedly tweeted that he was holding his stock position, when in fact he was selling into the increased prices that followed his false tweets. *Id.* at ¶ 19. These statements about holding the stock and the omissions are misleading because Fassari did not disclose his then-present intent to sell

the stock he had been vigorously touting, and these misleading statements are actionable under the antifraud provisions of the federal securities laws. *SEC v. Sripetch*, 2020 U.S. Dist. LEXIS 204293, at * 3, 10 (S.D. Calif. Nov. 2, 2020).

          **b.**      **Fassari made material misstatements**

Violations of the antifraud provisions require that the misstatements and omissions concern material facts. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *See TSC Indus.*, 426 U.S. at 449; *Platforms Wireless*, 617 F.2d at 1092. Liability arises not only from affirmative representations but also from failures to disclose material information. *SEC v. Dain Rauscher, Inc.*, 254 F.3d at 855-56. The antifraud provisions impose "'a duty to disclose material facts that are necessary to make disclosed statements, whether mandatory or volunteered, not misleading.'" *SEC v. Fehn*, 97 F.3d 1276, 1290 n.12 (9th Cir. 1996) (*quoting Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992)). *See also SEC v. Murphy*, 626 F.2d at 653 (profitability of an issuer was material to investors).

Fassari made material misrepresentations to investors that ARCS was a viable business, engaged in expansion and merger discussions, "with revenues of 450 million". Dwyer Decl. ¶ 28. These statements about the status and business prospects of a company that was defunct would be material to a reasonable investor. An investor would want to know if he or she was, on the one hand, investing in a company that had significant operations and revenue, plans to expand, and large investor interest or, on the other hand, a shell company that had not engaged in any business in over four years. In addition, a reasonable investor would consider it material that Fassari was recommending they purchase ARCS shares while representing that he was holding the stock until its price had substantially increased, when in fact Fassari was selling his entire block of over 41 million ARCS shares.

Fassari obtained trading profits of approximately $929,693 from his sales of

ARCS's securities while making false and misleading statements about ARCS.

### c. Fassari acted with scienter

While claims under Section 10(b) and Section 17(a)(1) require a showing of scienter, Sections 17(a)(2) and (3) only require a showing of negligence. *See Aaron v. SEC*, 446 U.S. 680, 701-02 (1980); *Vernazza v. SEC*, 327 F.3d 851, 859-60 (9th Cir. 2003). Scienter is proven with "'knowing or reckless conduct,' without a showing of 'willful intent to defraud.'" *Vernazza*, 327 F.3d at 860; *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990). Further, recklessness may be inferred from circumstantial evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91, n.30 (1983); *SEC v. Burns*, 816 F.2d 471, 474 (9th Cir. 1987).

Fassari acted with a high degree of scienter in engaging in the deceptive conduct and making the material misstatements and omissions in connection with the offer and sale of ARCS securities. Fassari knew or was reckless in not knowing that there was no basis to claim that ARCS, a defunct company, had significant operations and revenue. And contrary to his statements, Fassari knew that he had no communications with Raul Santos, the CEO of ARCS, and that Fassari himself was creating the false information about ARCS business activities. For example, Fassari tweeted on December 10 that he spoke with the CEO the prior night. Exh. 10, line 21. In fact, the CEO Raul Santos did not ever speak with Fassari. Santos Decl. ¶ 14, 15, 16. Fassari also knew at the time that he recommended investors purchase ARCS shares and he falsely represented that he was holding shares in ARCS that he intended to sell, and was in fact selling, those shares. Dwyer Decl. at ¶¶ 19, 27; Exh. 10, lines 64, 77.

### d. Fassari was negligent.

"Negligence "is the failure to 'exercise reasonable care under all the circumstances.'" *Robare Group, Ltd. v. SEC*, 922 F. 3d 468, 477 (D.C. Cir. 2019) (quoting Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 3 (2010)). To establish negligence, the SEC must show that the defendants failed to conform to the standard of care that would be exercised by a reasonable person. *See*

*Dain Rauscher,* 254 F.3d at 856; *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 453–54 (3d Cir.1997) (defining negligence in the securities context as the failure to exercise reasonable care or competence). Here, Fassari made numerous false and misleading statements on Twitter recommending that investors purchase ARCS shares, and this conduct falls below the standard of care of any reasonable person posting recommendations for the purchase of securities.

     e.  **In Interstate commerce**

Fassari used the means and instrumentalities of interstate commerce to post his recommendations on Twitter through the Internet, and he purchased securities using either telephone calls or the Internet to communicate with E*Trade.

    2.  **Fassari's Violations are Likely to be Repeated**

In addition to making a *prima facie* showing of Fassari's securities laws violations, the record also shows a likelihood that these violations will be repeated.[2] Whether a likelihood of future violations exists depends upon the totality of the circumstances. *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *Fehn*, 97 F.3d at 1295-96. The existence of past violations may give rise to an inference that there will be future violations. *See Murphy*, 626 F.2d at 655.

Fassari states in his @OCMillionaire Twitter profile that he is a "Master short squeeze artist." Dwyer Decl. at ¶ 16. Fassari's Twitter account contains recommendations to purchase numerous penny stocks. *See, e.g.*, Exh. 10, Summary OCMillionaire Tweets. He used a portion of the proceeds from his ARCS stock sales to purchase shares of other penny stocks that he also recommended on Twitter. Dwyer Decl. at ¶¶ 21, 25. Where Fassari continues to post recommendations on Twitter and trades in those securities, there is a likelihood of future violations.

  B.  **An Emergency Asset Freeze is Appropriate.**

---

[2] None of the relief sought in this Application requires that the Court find that Fassari will continue to violate the securities laws, but, notably, the record here supports such a finding.

"Federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The Court's equitable powers include the authority to freeze assets of both parties and nonparties. *See SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir. 2003) (affirming asset freeze over nonparty brokerage firm controlled by defendant to effectuate disgorgement order against defendant). The purpose of an asset freeze is to prevent the dissipation of assets so that they may be available to be paid as disgorgement for the benefit of the victims of the fraud. *Id.* 322 F.3d at 1132. The Ninth Circuit has found that "the public interest in preserving the illicit proceeds [of a defendant's fraud] for restitution to the victims is great." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999). Courts have recognized that a disgorgement order will often be rendered meaningless unless an asset freeze is imposed prior to the entry of final judgment. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990).

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *SEC v. Sripetch*, 2020 U.S. Dist. LEXIS 204293, *22-23, 2020 WL 6396927 (S.D. Calif. Nov. 2, 2020) (citing *Johnson, id.*). Courts consider a defendant's prior unlawful acts and the location of the assets in considering whether an asset freeze is warranted. *See, e.g.*, *Johnson,* 572 F.3d at 1085. Unlike a private litigant, the SEC need not show the risk of irreparable injury. *SEC v. Sripetch*, 2020 U.S. Dist. LEXIS 204293, *7 (S. D. Calif. Nov. 2, 2020) (fact that defendant had withdrawn funds from accounts at issue supported likelihood of dissipation).

An asset freeze in the amount of $1,859,387.76 is appropriate. Here, Fassari obtained over $927,000 by means of his false and misleading statements on Twitter about ARCS. On December 16, 2020, Fassari received the profits from his sales of over 41 million shares of ARCS. Dwyer Decl. at ¶¶ 19, 20. As of January 31, 2021, he

had dissipated a substantial portion of his ARCS trading profits and held only $370,416.92 in his E*Trade brokerage account. *Id.* at ¶ 25. The SEC requests that the Court freeze Fassari's asset in the amount of $1,859,387.76, which is the sum of his profits and an equal amount that the SEC may seek as a civil penalty. Courts in SEC enforcement cases have entered asset freeze orders to preserve assets for disgorgement and the payment of monetary penalties. *See, e.g., SEC v. Ahmed*, 123 F. Supp. 3d 301, 312 (D. Conn. 2015) (asset freeze preserves the *status quo*): *SEC v. Maillard*, 2014 U.S. Dist. LEXIS 56456, at *14, 2014 WL 1660024, at *4 (S.D.N.Y. 2014) ("The SEC is entitled upon an adequate showing ... to an asset freeze sufficient to preserve its disgorgement remedy as well as assets necessary to pay civil monetary penalties."). The asset freeze is necessary to prevent Fassari from further dissipation of the proceeds from his fraud.

**C.     The Other Relief Sought by the SEC is Necessary.**

In addition to the asset freeze, the SEC also seeks an order for an accounting, alternative service, expedited discovery, prohibiting the destruction or alteration of evidence, and ordering that Fassari show cause why the asset freeze should not be continued for the duration of the case. Federal courts have "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok Int'l, Ltd v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). "[O]nce the equity jurisdiction of the district court properly has been invoked, the court has power to order all equitable relief necessary under the circumstances." *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir. 1984).

The SEC request that the Court set this matter for a hearing to show cause prior to the expiration of the temporary asset freeze. Fed. R. Civ. P. 65(b)(2).

The Court has broad equitable powers to order ancillary relief to require an accounting and prohibit document destruction. *See Wencke*, 622 F.2d at 1369. Both orders are appropriate here. The SEC is aware that Fassari holds two brokerage

accounts at E*Trade, possibly a third brokerage account at TD Ameritrade, and a bank account at JP Morgan Chase Bank. The SEC is aware that the value of one E*Trade account was $370,461.92 as of January 31, 2021 and the value of the second E*Trade account was $343,573.24 as of December 31, 2020, but has no information on the value of the other two accounts. Accordingly, the Court should order Fassari to prepare an accounting, so the SEC can identify all the available assets to ensure that funds and assets are frozen properly and available to satisfy any future order of disgorgement or civil penalties against him. *See SEC v. Int'l Swiss Invs. Corp.*, 895 F.2d 1272 at 1276. Likewise, an order preventing the destruction of evidence is necessary to allow the parties to prepare for a hearing on the order to show cause and to prevent Fassari from destroying evidence of his violations and ongoing fraud.

In addition, also to facilitate the order to show cause hearing, the Court should authorize the SEC to serve Fassari by alternative service, including sending the pleadings in this matter by certified mail to the address listed on Fassari's brokerage accounts, and by email. With the current pandemic, it may be difficult to serve Fassari in person. *SEC v. McDiarmind*, No. 2:17-cv-07201, 2018 WL 5263067, *2 (C.D. Cal. Jan. 13, 2018) (court authorized email service for international defendant not available for service by traditional means).

The Court should enter an order prohibiting the destruction of documents to prevent Fassari from destroying evidence of his violations and ongoing fraud. The Court should also allow the SEC to obtain discovery on an expedited basis. Expedited discovery is authorized by Rules 30 and 34 of the Federal Rules of Civil Procedure and a court's broad equitable powers in SEC enforcement actions to order all necessary ancillary relief, s*ee Wencke*, 622 F.2d at 1369, and is necessary here to allow the parties to prepare for the show cause hearing.

## III. CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court Grant the requested relief.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: March 1, 2021. | Respectfully submitted, |
| 3 | | /s/ Amy J. Longo |
| | | Amy J. Longo (Cal. Bar No. 198304), Local Counsel |
| 4 | | Leslie J. Hughes (*pro hac vice application pending*) |
| 5 | | Attorneys for Plaintiff |
| | | Securities and Exchange Commission |